## THE BOARD OF CURRENCY *v.* THE MANAGERS OF THE CITIZENS' BANK.

The power conferred on the Board of Currency, by the stats. of 5 Feb. 1842, s. 2, and 14 March, 1842, ss. 15, 27, 28, 29, of requiring that the books, papers, and minutes of the proceedings of the board of managers and directors appointed to liquidate the affairs of the Citizens Bank, should be subject to examination by them and of supervising the proceedings of the managers and directors, was not repealed by the subsequent statutes of 5 April, 1843, s. 8, and 6 April, 1847.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Gayarré*, for the appellants. *Pitot*, for the defendants. The judgment of the court was pronounced by

KING, J.* The secretary of state, and treasurer of the state, alleging that they constituted the Board of Currency, applied to the District Court for a mandamus, directing the board of managers and directors of the Citizens' Bank, to give them access to the books, minutes, and papers of that bank, and to submit to their authority generally as a Board of Currency. The defendants answered: 1st. That under the present state of our legislation the Citizens Bank is not subject to the supervision of the Board of Currency; and 2d. That the board, as actually established, is in conflict with the 126th art. of the constitution, and has been abrogated by that article. The district judge sustained the first of those pleas, and dismissed the action, and the plaintiff's have appealed. In support of the first ground of defence it is contended that, the act of the 5th of April, 1843, (Acts p. 56,) and the act of the 6th April, 1847, (Acts p. 76,) have relieved the Citizens' Bank from the control and supervision of the Board of Currency, and have provided for it a new and entirely different administration of its affairs.

The Board of Currency was brought into existence by the act of the 5th of February, 1842, sec. 2, (Acts p. 38.) The principal object of its creation appears to have been, " to take care that the paper money issued under the authority of the State be not depreciated." But the important duty was also imposed upon it, of supervising the administration of the commissioners appointed for the management of banks in liquidation. Secs. 2, 16. The act " To provide for the liquidation of banks," approved, 14 March, 1842, (Acts p. 234,) imposed further duties, and conferred additional powers on the Board of Currency, subjecting the entire administration of the liquidating banks to the control and supervision of that board. Secs. 15. 27. 28. 29. In regard to those banks in which the State was a stockholder, or for which it had issued bonds, it is provided, in the 29th section, that if any of them " against which a decree of forfeiture shall have been rendered as aforesaid, should not enter into the foregoing arrangements, then and in that case it shall be liquidated as follows, to wit: As soon as the governor shall have ascertained that such decree has been rendered, it shall be his duty, by and with the advice and consent of the senate, to appoint six managers of each bank, and, if the senate be in recess, then the governor shall make the appointment of said managers, who shall elect one among themselves as president, and by whom the affairs thereof shall thereafter be conducted in its corporate name, *and under the direction of the Board of Currency ;* and it shall be the duty of the president and directors of such bank, who may be in office at the time such decree shall be rendered, to deliver up to said managers all the property, effects, debts and assets of every description; and said managers shall be, and are hereby, and until otherwise provided by the legislature, invested with the same powers and duties, and subject to the same liabilities, penalties and restrictions provided by the respective charters of said banks, so far as not inconsistent with this act."

A judgment of forfeiture was rendered against the Citizens' Bank, and that institution went into liquidation under the provisions of this act, and remained under the supervision of the Board of Currency, whose authority was never questioned, until the refusal longer to submit to this supervision which led to the present suit. Notwithstanding this long acquiesence, it is now contended that, the express grants of power contained in this act were in reality withdrawn, as far back as 1843, by the act of the 5th of April of that year (Acts,

BOARD OF CURRENCY
v.
MANAGERS OF CITIZENS' BANK

---

*EUSTIS, C. J. did not sit on the trial of this case, being a stockholder in the Citizens' Bank.

BOARD OF CUR- p. 56); that the 8th section of that act, together with the silence of the legisla-
RENCY ture in relation to the Board of Currency, indicates the intention of the legisla-
v. ture to relieve the bank from the supervision of the board, and repeals the
MANAGERS OF 29th section of the act of 1842. The 8th section of the act of 5th April, 1843,
CITIZENS'BANK relied on, is as follows:

Sect. 8. " That the twenty-ninth section of the act providing for the liquid-
ation of the banks, approved fourteenth March, eighteen hundred and forty-
two, be and the same is hereby modified and explained, so that the powers,
rights and duties of the managers of the Consolidated Bank and of the Citizens'
Bank of Louisiana, shall be the same, and they shall be subject to the same
responsibilities, as those defined by law with regard to the president and direc-
tors of these institutions before their being brought into liquidation, so far as is
not inconsistent with the provisions of this act, with the only exception that
the managers of the said bank in liquidation shall not, under any pretext what-
ever, issue notes or bonds bearing the appearance of, or for the purpose of,
circulation: *the said managers being also liable to the same fines and restrictions
established by the laws now in force, in relation to the property banks in liquid-
ation.*"

The avowed object of the legislature was to explain, not to repeal, a previous
statute, and a comparison of the two laws shows clearly the particular objects
to which the explanation relates. No powers are conferred on the managers
incompatible with those of the Board of Currency; but, on the contrary, it is
expressly declared that the managers shall be *liable to the same restrictions
established by the laws now in force in relation to the property banks in
liquidation.* Independently of this express reservation no clause of the act
indicates an intention to repeal the previous statute, and this construction ap-
pears to have been given to the law by the bank itself, for a number of years.
By no rule of interpretation can a change of legislative intention be inferred
from its silence.

The act of the 6th April, 1847, (Acts, p. 76,) repealed the 9th section of
the act of 1843, which provided for the appointment of six managers for the
administration of the Citizens' and Consolidated Banks, and provided for the
appointment of " a board of bank managers" to be composed of three mem-
bers, and for the election of three directors to each of those banks, and
then declares, "that the said directors, with the managers herein provided for,
shall have the power to manage and to do all things necessary and proper to the
liquidation of said banks respectively, *not inconsistent with this act and existing
laws;* provided however that, no act of the directors shall have any validity or
force, until it shall have received *the sanction of the two managers.*"

This act, it is contended, provides a new administration for the bank, and has
substituted the " board of bank managers" and directors, for the Board of Cur-
rency, and has relieved the corporation entirely from the supervision of the
latter. While making the change the legislature make a reservation similar
to that contained in the act of 1843, that the powers and acts of the new admin-
istration shall *not be inconsistent with existing laws.* One of those existing
laws placed the management of the bank under the supervision of the Board of
Currency; it had not been repealed, and is *still* in full vigor, unless it be repug-
nant to the act of 1847. It is urged that this repugnancy results from the
proviso with which the section concludes, " that no act of the directors shall
have any validity or force, until it shall have received the sanction of the two
managers representing the State." This proviso, it is said, controls the reser-

vation in the previous part of the section, and, by necessary construction, the acts of the directors, when approved by the managers, are valid and binding.

It is not necessary for the decision of this case to determine how far, if at all, this act has trenched upon the various powers previously conferred on the Board of Currency. The proviso at the conclusion of the section relied on is certainly not inconsistent with the exercise of the powers now asserted by the Board of Currency, of examining the books, papers,-and minutes of the proceedings of the Citizens' Bank. If, in other respects, the provisions of the earlier legislation be in conflict with those of the last act, to that extent only will the former yield and be deemed to have been repealed by the latter. Other considerations influenced the legislature in subjecting the administration of those banks to the supervision of the Board of Currency, besides that of securing their counsel and participation in the active management of the affairs of those corporations. The State had large interests depending upon the proper administration of those banks, and upon their ultimate ability to meet their liabilities. In order to protect those interests the legislature prescribed rules regulating their liquidation, and the appointed agents to superintend the execution of those rules were the Board of Currency. Through the reports of that board the legislature was to be informed of the condition of the banks, and of the acts of the agents entrusted with the more immediate and active management of their liquidation ; and, with the view of enabling the board to supply the required information, the books, papers, and minutes of the banks, were to be submitted to their inspection. No provision of the act of 1847, nor other law to which we have been referred, authorizes the conclusion that the legislature intended to dispense with the agency, in this respect at least, of the Board of Currency, nor with the advantages proposed to be derived from it. A law providing for a Board of Currency exists upon our statute books unrepealed, and among the powers which it confers are those claimed to be exercised by the plaintiffs.

But it is objected that the secretary of state and the treasurer of the state cannot constitutionally perform the functions of that trust. The 126 article of the constitution declares that, " No person shall hold or exercise at the same time more than one civil office of emolument, except that of justice of the peace." The act establishing the Board of Currency created a distinct office, and provided that the three members, of whom it was originally composed, should be appointed by the governor, with the advice and consent of the senate. Acts of 1842, sec. 2. (Acts, p. 38). The act of the 6th April, 1843, (Acts, p. 63), declares, " That in future the Board of Currency shall consist of two members only, to wit, the secretary of state and the treasurer of the state, each of whom shall *ex-officio* be a member thereof, and shall be entitled to only the yearly salary of $1200, free from all expenses of office," &c. Before the passage of this law the office existed as a separate trust, entirely distinct and disconnected from those of secretary of state or state treasurer. Its existence as a separate office was not destroyed, by the designation of two officers who alone should discharge its duties *ex officio*. But, on the contrary, its existence as an office of emolument is recognized in the amendatory act itself. To this union of the trusts there was no impediment when the law was enacted. Similar instances of the accumulation of a variety of offices in the hands of one person were not unfrequent under our former legislation, the most remarkable of which was that of the parish judge, who,

BOARD OF CUR-
RENCY
*v.*
MANAGERS OF
CITIZENS' BANK

in virtue of that office, discharged the duties of numerous trusts, both judicial and ministerial, which were not the less separate *offices*. This was deemed an evil by the framers of our constitution, and hence the adoption of the prohibitory article. *Membership of the Board of Currency being recognized by law as an office of emolument, its tenure has become incompatible with those of secretary of state or treasurer of the state, under our present constitution.* The effect of the article has been to repeal so much of the act of 1843 as constitutes those officers *ex officio* members of the Board of Currency. The appointment of the one, or the election of the other, no longer carries with it membership of the board, or authority to discharge the duties, or receive the emoluments of that trust. The consequence of the repeal has been to leave a statute providing for a Board of Currency which is inoperative, there being no person upon whom the office can be conferred under the law as it now stands.

---

## SAME CASE—ON A RE-HEARING.

Art. 144 of the new constitution which provides that no office shall be superseded by the taking effect of the constitution, but that the laws relative to the duties of the several officers shall remain in full force though contrary to the new constitution, and that the duties thereof shall be performed by the respective officers according to the existing laws, until the organization of the government under the new constitution, and the entering into office of the new officers to be appointed under said government, authorized the secretary of state and treasurer to continue to discharge the duties of members of the Board of Currency after the taking effect of the new constitution, though membership of the board was a civil office of emolument, distinct from that of secretary of state or treasurer, and involved the exercise by them at the same time, of two civil offices of emolument contrary to art. 126 of the new constitution.

THE judgment of the court on the re-hearing was pronounced by Rost, J. In this case we came to the conclusion that art. 126 of the constitution had repealed so much of the act of 1843, establishing the present Board of Currency, as constitutes the state treasurer and the secretary of state *ex officio* members of the board, and that in consequence of that repeal the statute had become inoperative. The case was submitted to us without any oral argument, at a time when the pressure of public business was great, and we overlooked art. 144 of the constitution, which guards against the inconvenience which we supposed to exist. This article was not referred to by either party in the written argument furnished to us.

The ground upon which the defendants rely is, that the membership of the Board of Currency is a civil office of emolument. Such being the fact, under the dispositions of art. 144, the act creating the office was not repealed or in any manner affected by the new organic law; that statute remained in full force, though in some respects contrary to the constitution, and the state treasurer and secretary of state were authorized and required to continue to perform the duties of the Board of Currency according to the existing laws, until the organization of that board by the legislature under the new constitution.

It is therefore ordered that the judgment of the court below be reversed. It is further ordered, that the rule taken upon the defendants be made absolute, and that a peremptory mandamus issue against them, as prayed for. It is further ordered, that the defendants pay the costs in both courts.